IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| American Family Mutual Insurance Company, | ) ) ) | |
| Plaintiff, | ) ) | **MEMORANDUM OPINION AND ORDER ON MOTION** |
| vs. | ) ) | **FOR SUMMARY JUDGMENT** |
| Mark Jones; Jill Jones; Derrick Bohlman; David Lalim; and Regina Lalim, | ) ) ) | Civil No. 3:05-cv-93 |
| Defendants. | ) ) | |

Before the Court is a Motion for Summary Judgment filed by Plaintiff American Family Mutual Insurance Company ("American Family") (Doc. #14). Defendants Mark and Jill Jones ("the Joneses") have filed a brief in opposition to the motion (Doc. #27).[1] The Court has carefully considered the briefs and documents filed by the parties and now issues this memorandum opinion and order.

## SUMMARY OF DECISION

The Court concludes that Derrick Bohlman had regular use of his father's Pontiac Grand Am as a matter of law, and therefore the policy exclusion asserted by American Family applies. Because Derrick Bohlman is not entitled to liability coverage under the terms of the insurance policy at issue, and accordingly no duty to defend or indemnify can arise under that policy, American Family's Motion for Summary Judgment is GRANTED.

---

[1] The Court notes that Defendants Derrick Bohlman, David Lalim, and Regina Lalim have not appeared or otherwise defended against this action. It appears that only Plaintiff American Family and Defendants Mark and Jill Jones have an interest in the outcome of this litigation.

1

## FACTUAL BACKGROUND

The instant declaratory judgment action arises out of an automobile accident.  On June 11, 1999, Defendant Mark Jones was driving a 1991 Ford pickup at or near an intersection in Anoka County, Minnesota, and his wife, Defendant Jill Jones, was riding in the vehicle as a passenger. Defendant Derrick Bohlman was driving a 1992 Pontiac Grand Am, in which his girlfriend LaRae Thielen was a passenger, at or near the same intersection.  The vehicles were involved in a collision, and at least one of the vehicle occupants sustained injuries.  See Derrick Bohlman Dep. at 8, June 1, 2006; Richard Bohlman Dep. at 29-30, July 28, 2006.

At the time of the accident, Derrick Bohlman was only seventeen years old.  Derrick's father, Richard Bohlman, owned the Pontiac Grand Am involved in the collision, and he had the Pontiac insured under a motor vehicle liability policy with State Farm Insurance.  Some time after the accident, the Joneses made a claim for personal injury damages to State Farm under Richard Bohlman's insurance policy, and they received a settlement for that claim.

On March 21, 2005, the Joneses brought a personal injury action against Derrick Bohlman, along with his mother Regina Lalim and his stepfather David Lalim ("the Lalims"), in state district court in Minnesota.  Reynolds Aff. Ex. A.  In their complaint, the Joneses alleged that Derrick Bohlman negligently caused the automobile accident, and that as a result, they suffered personal injury damages, including loss of wages, loss of earning capacity, present and future medical expenses, and loss of services and companionship.  Reynolds Aff. Ex. A, ¶¶ V-VI, VIII.

At the time of the accident in June 1999, David Lalim had a motor vehicle insurance policy with Plaintiff American Family, and the Joneses' personal injury lawsuit against the Lalims and Derrick Bohlman was tendered to American Family to defend and indemnify.  See Reynolds Aff.

Ex. E.  On August 26, 2005, about five months after the Joneses commenced their personal injury lawsuit, American Family filed the instant declaratory judgment action in this Court.  American Family named as Defendants the Joneses, the Lalims, and Derrick Bohlman, and its Complaint seeks a determination that it is not obligated to defend the personal injury suit against the Lalims and Derrick Bohlman, nor to indemnify them against any claims asserted by the Joneses.  Compl. ¶ 12.

The parties are in federal court on the basis of diversity jurisdiction.  Plaintiff American Family is a business entity organized under the laws of the State of Wisconsin, with its principal place of business located in Madison, Wisconsin.  Compl. ¶ 1.  Defendants Derrick Bohlman, David Lalim, and Regina Lalim all reside in Tioga, North Dakota, and are citizens of the State of North Dakota.  Compl. ¶¶ 2-4.  Defendants Mark Jones and Jill Jones reside in Bethel, Minnesota, and are citizens of the State of Minnesota.  Compl. ¶¶ 5-6.  The Complaint alleges an amount in controversy in excess of $75,000.00.  Compl. ¶ 7.

American Family now moves for summary judgment, arguing that there are no genuine issues of material fact and that an exclusion in its insurance policy applies in this case as a matter of law. The Joneses oppose American Family's motion on several different grounds.  In order to resolve the motion for summary judgment, the Court must closely examine both the policy exclusion asserted by American Family and the facts relevant to that exclusion, particularly whether the Pontiac Grand Am was furnished or available for Derrick Bohlman's "regular use."

David Lalim was the named insured on a North Dakota family car insurance policy issued by American Family, which was effective on the date of the accident in June 1999.  Reynolds Aff. Ex. E.  The only vehicle listed in the policy declarations was a 1988 GMC Rally/Vandura G2500.

Reynolds Aff. Ex. E., at 3.  The primary provision of the policy at issue in this case is an exclusion relating to regular use of other vehicles.  Specifically, the policy provides:

> **EXCLUSIONS**
> This coverage does not apply to:
> . . . .
> 9.   **Bodily injury** or **property damage** arising out of the **use** of any vehicle, other than **your insured car**, which is owned by or furnished or available for regular **use** by **you** or any resident of **your** household.

Reynolds Aff. Ex. E, at 7.  The policy further provides the definitions of certain terms set in bold type.  "**Bodily injury** means bodily injury to or sickness, disease or death of any person."  Reynolds Aff. Ex. E, at 6.  "**Use** means ownership, maintenance, or use."  Reynolds Aff. Ex. E, at 6.  "**Your insured car**" means, as relevant here, "[a]ny **car** described in the declarations and any **private passenger car** or **utility car you** replace it with."  Reynolds Aff. Ex. E, at 6,  "**You** and **your** mean the policyholder named in the declarations and spouse, if living in the same household."  Reynolds Aff. Ex. E, at 6.

American Family and the Joneses dispute whether Derrick Bohlman was covered by the American Family policy at the time of the accident.  In particular, they disagree about whether Derrick's use of the Pontiac Grand Am owned by his father, Richard Bohlman, rises to the level of "regular use" under the policy, thereby excluding the collision from liability coverage.  The parties essentially agree that the material facts of this case relating to Derrick's use of the Pontiac are not in dispute.  However, the Joneses contend that the inferences to be drawn from the material facts should be decided at trial and not on a motion for summary judgment.  <u>See</u> Defs.' Mem. in Opp'n to Summ. J., at 2.

At the time of the events relevant to this case, Derrick Bohlman was a seventeen-year-old high school student who resided in Tioga, a small town in northwestern North Dakota.  Derrick

Bohlman Dep. at 7, 11.  His father, Richard Bohlman, and his mother and stepfather, Regina and David Lalim, all resided in Tioga as well.  Derrick Bohlman Dep. at 12; Richard Bohlman Dep. at 10.  Derrick had some flexibility in his living arrangement and essentially lived at both his father's and his mother's homes, which were located only six miles apart.  Derrick Bohlman Dep. at 11, 13-14, 25-26; Regina Lalim Dep. at 11, June 1, 2006; Richard Bohlman Dep. at 12.  He had a bed and clothes at both homes, and he was able to attend the same school regardless of where he stayed.  Derrick Bohlman Dep. at 14-15, 25.

Derrick was also allowed to drive both his father's and his mother's vehicles with permission.  Derrick Bohlman Dep. at 19-20, 32; Regina Lalim Dep. at 12.  His mother and stepfather owned a 1988 GMC Vandura van and a small Mazda pickup, although his mother only recalled him driving the Mazda and not the van.  Regina Lalim Dep. at 14-15.  His father Richard Bohlman owned both a 1992 Pontiac Grand Am and a 1977 Chevrolet pickup.  Derrick Bohlman Dep. at 27; Richard Bohlman Dep. at 12.  Derrick was allowed to drive both of his father's vehicles with permission, although he drove the Chevrolet pickup more frequently.  Derrick Bohlman Dep. at 27; Richard Bohlman Dep. at 15.  Derrick characterized the Chevrolet pickup as the vehicle used on an "everyday basis" for driving in town, and the Pontiac as the more reliable vehicle for driving "out of town" and for "special occasions."  Derrick Bohlman Dep. at 27.  Richard Bohlman also characterized the Chevrolet pickup as a "daily, back-and-forth-to-work vehicle," and the Pontiac as "basically a car to be used out of town, going on vacation or trips or to Minot."  Richard Bohlman Dep. at 16-17.

Derrick recalled that he had used the Pontiac to drive out of town, in particular to the nearby larger cities of Minot or Williston, "a dozen times or more"  Derrick Bohlman Dep. at 18. Richard

5

Bohlman recalled that he allowed Derrick to drive the Pontiac about seven or eight times, three or four of those times out of town, prior to his seventeenth birthday, but that he allowed approximately monthly out-of-town trips for the six months before the accident.  Richard Bohlman Dep. at 45-50. Derrick's purpose in driving to Minot or Williston was usually related to extracurricular or social activities, such as to go shopping, to see a movie, or to visit friends.  Derrick Bohlman Dep. at 19. His father generally limited him to driving in Tioga and in the Minot/Williston area.  Derrick Bohlman Dep. at 22.

Derrick had driven to and in Minnesota several times previously with his father in the vehicle, but the trip in June 1999 was his first unaccompanied trip to the Minneapolis area.  Derrick Bohlman Dep. at 18; Richard Bohlman Dep. at 23, 26-28, 40.  Both Derrick and Richard Bohlman agreed with the assessment that it was a "special occasion" for Derrick to drive to the Twin Cities area.  Derrick Bohlman Dep. at 12; Richard Bohlman Dep. at 32-33.  Derrick also recalled that he drove the Pontiac to school occasionally in the winter, about a dozen times over a year-long period. Derrick Bohlman Dep. at 21.

Richard Bohlman kept the keys for the Pontiac accessible in the house, and Derrick did not carry his own set of keys.  Derrick Bohlman Dep. at 21, 29; Regina Lalim Dep. at 13; Richard Bohlman Dep. at 15.  Derrick had to ask his father's permission to drive either of the vehicles. Derrick Bohlman Dep. at 21; Richard Bohlman Dep. at 15.  He stated that he got permission to use the vehicles pretty much whenever he asked, although his father would say no "every once in a while."  Derrick Bohlman Dep. at 30, 32.  Richard Bohlman agreed that he gave Derrick permission to drive his vehicles pretty much as a matter of course.  Richard Bohlman Dep. at 37.

Derrick's mother, Regina Lalim, recalled that the Pontiac was "used mostly for either trips out of town or special occasions."  Regina Lalim Dep. at 10.  She stated that the reason typically would be a road trip to Minot or Williston, but not out of the state.  Regina Lalim Dep. at 13.  She had never known Derrick to take the Pontiac out of the state by himself prior to his trip to Minneapolis in June 1999.  Regina Lalim Dep. at 11.

## DISCUSSION

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The burden is on the moving party to establish the basis for its motion.  Donovan v. Harrah's Md. Heights Corp., 289 F.3d 527, 529 (8th Cir. 2002).  It is axiomatic that the evidence is viewed in a light most favorable to the non-moving party, and the non-moving party enjoys the benefit of all reasonable inferences to be drawn from the facts.  See, e.g., Vacca v. Viacom Broad. of Mo., Inc., 875 F.2d 1337, 1339 (8th Cir. 1989) (quotations omitted).  If the moving party shows there are no genuine issues of material fact, the burden shifts to the non-moving party to set forth facts showing a genuine issue for trial.  Donovan, 298 F.3d at 529.

A fact is "material" if it might affect the outcome of the case, and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The basic inquiry is whether the evidence presents a sufficient disagreement to require full consideration on the merits by a jury, or whether it is so one-sided that one party must prevail as a matter of law.  Diesel Mach., Inc. v. B.R. Lee Indus., 418 F.3d 820, 832 (8th Cir. 2005).

When the unresolved issues in a case are primarily legal rather than factual, summary judgment is particularly appropriate. <u>Mansker v. TMG Life Ins. Co.</u>, 54 F.3d 1322, 1326 (8th Cir. 1995).  However, although summary judgment may be an appropriate and useful tool to avoid useless and time-consuming trials, "[it] should not be granted unless the moving party has established the right to a judgment with such clarity as to leave no room for controversy." <u>Vacca</u>, 875 F.2d at 1339 (citations omitted).

American Family contends this case is appropriate for summary judgment because the facts establish that the "regular use" policy exclusion applies as a matter of law, and therefore Derrick Bohlman is not entitled to coverage for the June 1999 accident.  The Joneses counter that even though there are no disputed material facts, "regular use" is a question of fact which should be decided at trial and not as a matter of law.  In the alternative, the Joneses argue that the undisputed facts do not support a finding that Derrick Bohlman's use of the Pontiac Grand Am was "regular."  Finally, the Joneses also argue that American Family should be equitably estopped from asserting the policy exclusion in this case.

When interpreting an insurance policy, courts look first to the language of the policy as a whole. <u>McPhee v. Tufty</u>, 2001 ND 51, ¶ 21, 623 N.W.2d 390, 395.  If the language is clear on its face, there is no room for construction. <u>Id.</u>  Terms of an insurance policy are given their ordinary, usual, and commonly accepted meaning. <u>Center Mut. Ins. Co. v. Thompson</u>, 2000 ND 192, ¶ 14, 618 N.W.2d 505 (quotation omitted).  Insurance contracts must be construed as a whole to give meaning and effect to each clause, if possible. <u>McPhee</u>, 2001 ND 51, ¶ 21, 623 N.W.2d at 395.

"The purpose of an exclusion of coverage for cars regularly used is to provide coverage for occasional or incidental use of other cars without the payment of an additional premium, but to

exclude coverage for the habitual use of other cars, which would increase the risk of the insurer without a corresponding premium." Am. Hardware Mut. Ins. Co. v. Nat'l Farmers Union Prop. & Cas. Co., 422 N.W.2d 402, 405 (N.D. 1988) (citing 12A Couch on Insurance § 45:1074 (2d ed. 1981)). An insurance policy with such an exclusion "is not intended to cover the insured against personal liability with respect to his or her use of another automobile which he or she frequently uses or has the opportunity to use." 8A Couch on Insurance § 121:66, at 121-91 (3d ed. 2005). Rather, "the evident intent of the limitation with respect to other automobiles is to prevent a situation in which the members of one family or household may have two or more automobiles actually or potentially used interchangeably, but with only one particular automobile insured." Id.; see also Kern v. Liberty Mut. Ins. Co., 398 F.2d 958, 961 (8th Cir. 1968) (stating that the obvious purpose of such policy exclusions is to "protect the insurer from a situation where the insured could purchase one policy for a described vehicle and be covered by the same policy without qualification while operating any and all other automobiles under his control or available for his use").

The American Family policy at issue in this case does not define the term "regular use." However, the North Dakota Supreme Court has previously considered the meaning of that term in an exclusion governing use of other vehicles in a motor vehicle insurance policy. See Am. Hardware, 422 N.W.2d at 404-05; Kunze v. State Farm Mut. Auto. Ins. Co., 197 N.W.2d 685, 689-90 (N.D. 1972). There is no precise definition of "regular use," and generally each case must be determined on the basis of its own facts. See Am. Hardware, 422 N.W.2d at 404; Kunze, 197 N.W.2d at 689 (citing 13 Couch on Insurance § 45:1054, at 69 (2d ed. 1966)); see also Kern, 398 F.2d at 962 (noting that "each case necessarily depends upon the facts of the situation, and there is obviously no single or exclusive criteria or test which will conclusively determine the issue").

Nevertheless, the North Dakota Supreme Court has provided some guiding principles in interpreting the term "regular use":

> Whether an automobile is furnished by another to an insured for his regular use may reasonably depend upon the time, place and purpose for which it is to be used. One furnished for all purposes and at all times and places would clearly be for his regular use. One furnished at all times but strictly for business purposes alone could hardly be said to have been furnished for his regular use at a time and place when it was being used for personal purposes.

Am. Hardware, 422 N.W.2d at 404 (quoting Kunze, 197 N.W.2d at 693).

> The test whether an automobile is furnished for "regular" use within an exclusionary clause is not necessarily the frequency or regularity of its use, although an infrequent and casual use by special permission on particular occasions may not constitute a furnishing for regular use. It is the nature of the use for which the vehicle is intended and to which it is put, rather than the actual duration of use, which is significant.
>
> There is authority which finds in the phrase "regular use" two aspects of regularity: the one being the regularity of use by the particular person, and the other the regularity with which it was put to use for the particular purpose. Otherwise stated, an automobile by this view is not to be deemed furnished for regular use unless it is regularly being used by the person for whom it is furnished and for a purpose for which it is regularly to be used.

Kunze, 197 N.W.2d at 689 (quoting 13 Couch on Insurance § 45:1054, at 69 (2d ed. 1966)). "Regular use need not be 'continuous' or even defined in terms of continuity, and need not be uninterrupted or even for all purposes or without limitation." 8A Couch on Insurance § 121:71, at 121-97 (3d ed. 2005). "Generally, intra-family use is considered to be regular use." 6C John A. Appleman, Insurance Law and Practice § 4455, at 566 (Rev. ed. 1979).

Whether a vehicle is available for the regular or frequent use of the insured is generally a question of fact. State Farm Mut. Auto. Ins. Co. v. LaRoque, 486 N.W.2d 235, 237 n.1 (N.D. 1992); see also Kunze, 197 N.W.2d at 689 (quoting 13 Couch on Insurance § 45:1054, at 69 (2d ed. 1966)) ("Where the evidence is conflicting the question whether a particular vehicle was furnished for

regular use within the meaning of an exclusionary clause may be for the jury."). However, that does not automatically render summary judgment inappropriate in every case involving the issue of regular use. Rather, it is well-established that a district court may draw inferences from the facts and evidence presented in the record. <u>Am. Hardware</u>, 422 N.W.2d at 404. In <u>American Hardware Mutual Insurance Company v. National Farmers Union Property and Casualty Company</u>, 422 N.W.2d 402, 403-04 (N.D. 1988), the North Dakota Supreme Court upheld a district court's finding that there was no regular use as a matter of law "[b]ased upon stipulated facts, depositions, records and other discovery." Indeed, a district court may decide the issue of regular use upon a motion for summary judgment "if the material facts are not in dispute and the inferences which may reasonably be drawn from such facts lead to but one conclusion." <u>Kunze</u>, 197 N.W.2d at 690 (quoting <u>Moutry v. Am. Mut. Liab. Ins. Co.</u>, 151 N.W.2d 630, 632 (Wis. 1967)).

Turning to the exclusionary provision at issue in this case, the parties do not dispute most of the required elements. Any bodily injury suffered by the Joneses arose out of Derrick Bohlman's use of the Pontiac Grand Am, and that particular vehicle clearly was not an "insured car" under the declarations of the American Family policy. Furthermore, the parties agree that Derrick Bohlman was a resident of the Lalims' household. Therefore, the only issue before the Court is whether Derrick Bohlman's use of the Pontiac was "regular" such that the policy exclusion should apply as a matter of law.

Applying the foregoing principles to the facts of this particular case, the Court concludes the Pontiac Grand Am was furnished or available for Derrick Bohlman's regular use. As a teenager living in his father's home, Derrick had regular access to the Pontiac, and although he had to seek his father's permission to drive the vehicle, he was generally granted such permission as a matter

11

of course.  He used the Pontiac in accordance with the purposes his father had established for that particular vehicle, namely, for driving out of town and for special occasion trips.

In their brief opposing summary judgment, the Joneses focus on the limitations placed upon Derrick's use of the Pontiac, such as the fact that he had to seek permission to drive the vehicle, that he did not regularly carry keys, that he only drove the vehicle out of town a limited number of times, and that he drove the Chevrolet pickup more frequently.  However, the Court finds that Derrick's use of the Pontiac is exactly the type of use that would be "regular" for a teenager living in a small rural community such as Tioga, North Dakota.  If completely unrestricted use of a vehicle were the test for "regular use," it is doubtful that many teenagers would be considered regular users of their parents' vehicles.  Here, Derrick used the Pontiac in the manner which his father intended, primarily for out-of-town trips, and that was just the sort of trip he was on when the automobile accident occurred.  The fact that Derrick had never driven to Minneapolis by himself prior to the accident is not dispositive, but rather is only one factor to be weighed in the analysis.

Here, based upon the entire record, the Court is convinced that Derrick Bohlman's use of the Pontiac Grand Am rises to the level of "regular use" as a matter of law, such that the policy exclusion asserted by American Family applies.  American Family should not be required to provide liability coverage to Derrick Bohlman for another vehicle he frequently uses or has the opportunity to use, because that unfairly increases the risk to the insurer without a corresponding increase in premiums.  Because Derrick Bohlman's collision with the Pontiac is excluded from liability coverage under the American Family policy, it necessarily follows that American Family has no duty to defend or otherwise indemnify any of the parties making claims under that policy.

12

Finally, the Court notes the Joneses have also advanced the argument that American Family should be equitably estopped from asserting the policy exclusion.  However, the Joneses have given short shrift to that claim and have cited no supporting authority.  The Court is simply not persuaded that equitable estoppel applies in this case based on a few conclusory statements set forth in the Joneses' brief.

**DECISION**

For all the foregoing reasons, the Motion for Summary Judgment filed by American Family is hereby **GRANTED**.

**IT IS SO ORDERED.  LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated this 30th day of September, 2008.


_____/s/   Ralph R. Erickson_____
Ralph R. Erickson, District Judge
United States District Court